[No. 29965. Department Two. October 5, 1946]

JEANNE E. TROWBRIDGE, *Respondent,* v. MYRON C. TROWBRIDGE, *Appellant.*[1]

[1]Reported in 173 P. (2d) 173.

C. A. *Schneider*, for appellant.

*Wright & Wright*, for respondent.

ROBINSON, J.—The appellant in this case was found guilty of contempt of court, and appeals from an order imposing a sentence of fifteen days in jail. In the main action, which was an action for divorce, the wife, submitting her complaint and affidavit, procured a show cause order which read, in part, as follows:

"You, the said MYRON C. TROWBRIDGE, be and you hereby are directed to appear and show cause in this court on Thursday, the 19th day of July, 1945, in Department No. 6 of said court, at 10 o'clock A. M., or to such other department as the said cause may be assigned, then and there to show cause why you should not allow and permit the plaintiff to have the custody of her minor son, three years of age, why you should not accord her the privilege of living in the home and why you should not make suitable provision for her and the children during the pendency of this action, as well as a reasonable sum on account of costs and attorneys' fees herein. HEREIN FAIL NOT AT YOUR PERIL!"

Upon the hearing, an order was issued on July 24, 1945, directing the appellant here to pay certain bills, certain sums as support money, counsel fees, and so forth. The paragraph of this order with which we are directly concerned reads as follows:

"IT IS HEREBY ORDERED that the defendant shall vacate the home of the parties by twelve o'clock noon on Saturday, July 28th, 1945, at which time plaintiff thereafter, and until the further order of this court, shall be permitted and is hereby permitted to occupy said home with the minor child, and the defendant is barred from the home except that he may come to visit the minor child at suitable times, but without in any wise disturbing or annoying the plaintiff."

The action for divorce came on for trial in January, 1946. The trial judge pronounced an oral opinion to the effect that he would grant a divorce in favor of the wife, and a minute

entry was entered to that effect. On January 22nd, and before any findings of fact, conclusions of law, or decree was entered, the wife filed an affidavit for an order requiring defendant to show cause why he should not be punished for contempt of court. This affidavit reads as follows:

"JEANNE L. TROWBRIDGE, being first duly sworn on oath deposes and says:

"That she is the plaintiff in the above entitled action; that heretofore and on or about July 24, 1945, in the above entitled cause, the court made an order permitting her to occupy the home of the parties and barring the defendant from the home except to visit the minor child at suitable times, but without in any wise disturbing or annoying the plaintiff; that at about 1:00 A. M. on the 18th day of January, 1946, the defendant, notwithstanding said restraining order, came to the home of the parties, broke in the window and grievously assaulted the plaintiff, all contrary to the restraining order issued herein. That the plaintiff makes this affidavit for the purpose of securing an order of contempt or a show cause order therefor."

The defendant husband was ordered to show cause why he should not be punished for contempt. Two or three days after the show cause order, he filed the following affidavit:

"MYRON C. TROWBRIDGE, being first duly sworn, upon his oath, deposes and says: that he is the above named defendant, that he has read the affidavit of plaintiff dated January 22, 1946, for an order to show cause; that this affiant admits that he went to the home of the parties and broke a window and denies each and every allegation contained therein; that this affiant further states that said restraining order was not in force or effect at the time as the Court had fully tried the case and rendered its decision granting a divorce and awarding the property in question in common to both parties giving the plaintiff the right to use the same for herself and children only and that at the time in question, the plaintiff had a man by name of Pixley in the home in her bedroom and was in the act of committing a crime and that this affiant was trying to prevent the commission of crime and especially in the home where his children were."

These affidavits and a second affidavit filed by each party were before the court at the hearing.

184

■ Appellant's first contention is that the order barring him from the home was void. If this be so, the violation of it would not constitute contempt. The contention that the order is void is grounded upon the claim that the order to show cause, above quoted, did not specifically apprise the appellant that he would be ordered to show cause why he should not be debarred from the family home. It is true that it does not do so in terms; but the plaintiff's affidavit upon which it was issued did say:

"That the defendant has threatened to abuse her at various times and so much so that she is fearful of physical injury."

■ This contempt proceeding is ancillary to the divorce action, and the jurisdictional powers of the court in such actions are very wide. They are set out at length in Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15] (Laws of 1933, chapter 112, p. 432, § 1), which closes with the following proviso:

"*Provided,* That the court shall, at all times, have the power to grant any and all restraining orders that may be necessary to protect the parties and secure justice."

■ But the conclusive answer to the appellant's contention is that we have no statement of facts revealing what took place at the hearing of the first show cause order. Such hearings are generally somewhat informal. For all we know, there may have been a waiver of some sort, or even a consent to the order debarring the appellant from his home.

■ The appellant's second contention is that, even if the injunctive order barring him from his home was valid, it lapsed upon the rendition of the oral decision in the divorce case and its entry in the court minutes, in the absence of any direction that it should remain in effect. It may be conceded that this would have been so had a divorce decree been actually entered. There are two good reasons why the appellant's contention must be held invalid. In the first place, as the judge who heard the contempt proceedings suggested, the trial was not over, and the status

of the parties was not changed by the court's oral announcement and an entry thereof in the minutes. The parties remained husband and wife. Secondly, as we interpret the injunctive order itself, it was to remain in effect until the further order of the court, and no such order was entered.

■ Appellant's third contention is that he was sentenced to prison for fifteen days, (1) without an opportunity to introduce evidence tending to prove his innocence of the charge against him, or (2) in case of his guilt, to show mitigating facts and circumstances. We are of the opinion that this contention is sound. We are not here dealing with a contempt committed in the presence of the court. Facts had to be established. The appellant was entitled to introduce evidence to prove that he had not been guilty of contempt, and even if so, to show that his acts were to some extent excusable.

The statement of facts shows that, after much colloquy and argument, the following occurred:

"The Court: You may state, Mr. Schneider, all the matters that you want, any other matters. You have very plainly stated what you expect to prove; and if there are any other matters, you may state them. Mr. Schneider: That on the night in question the defendant saw Mr. Pixley enter the home of the parties where his wife and his children were living, at about 1:30 a. m. in the morning. That he parked his car some distance away from the house; that the door opened and he went in, and there were no lights in the house. That after some lapse of time, Mr. Trowbridge, the defendant, went to the back door and knocked; that there was no response from the interior, from his wife or anybody in the house when he knocked at the back door. That he then went around to the side, to the bedroom, not where the children were—the children were in a different room,—and saw the wife and Pixley on the bed. At that time he was partially disrobed. That he called to her, and she responded then. She saw him. Mr. Pixley slipped off the bed and went out. He asked to have her send this Pixley out. The Court: What is that? Mr. Schneider: He asked her to send Mr. Pixley out and send him home. She denied his being there at all times; and he said he was coming in to get him and take him out. And she refused, and he broke the window; and she then fought to prevent

him coming through the window to get Mr. Pixley, and she grabbed a great, big piece of glass, as she says, and struck him over the head. He didn't go through the window. He waited until the officers came, and then they went in the house and found Mr. Pixley in there and the wife, who then had her bathrobe on. Mr. Pixley had his coat on and was fully dressed; and the officers took the gun away from him. Meantime Pixley had threatened to shoot the defendant. He said he could have shot him; and he was taken out and sent home by the officers. That is what our testimony will show. We will show further that they had been meeting frequently.

"MR. WRIGHT: Of course, if your Honor please, without admitting the truth of that at all, except as to his trying to break in the window, *I wish to enter a demurrer to that offer of proof as constituting any defense to this contempt.* THE COURT: Let me ask you this question, Mr. Wright, which occurred to me since I last spoke. There had been no decree of divorce entered here at that time, as I found. Then on the theory that these people were still husband and wife, no divorce but they were still husband and wife, did he have a right to do what he did, what he says he did? MR. WRIGHT: Well, your Honor please, I can just answer that the same as I have answered the other. I don't think anybody has a right to take the law into his own hands and violate the law. THE COURT: Well, gentlemen, I believe that I am right. I believe I am right. I will sustain this demurrer to that evidence as a defense in this case." (Italics ours.)

After argument by counsel, the court said:

"THE COURT: Now, gentlemen, I think I am right. It might be a little different where a man violating an order of court rushes in a house to save people from a burning building, or to prevent the commission of a felony. But the facts in this case, as pleaded by the defendant, show that he went there for the purpose of catching or punishing a paramour that he supposed to be lurking there. The children were not endangered. I think that is contempt of court. I may be wrong. I am not as well satisfied of it as I would like to be, but I can't come to any other conclusion."

Shortly thereafter, the court said:·

"The judgment of the Court is that the man is guilty of contempt of court, and shall be punished by a confinement in jail of fifteen days."

■ As we interpret the record, the court held that defendant's admission in his pleadings that he went to his home "for the purpose of catching or punishing a paramour that he supposed to be lurking there," in and of itself established the charge of contempt as a matter of law, and, accordingly, refused to hear his offered oral evidence.

As the court held, in ruling upon appellant's second contention, the parties were not divorced when the appellant attempted to enter his home, in spite of the injunctive order barring him therefrom. It was still his home. The respondent who seeks to have him committed for contempt was still his wife. We think that appellant was entitled, at the very least, to submit the offered evidence to the effect that he saw through a window a man, partially disrobed, on a bed with his wife, before he attempted to force his way into the house in violation of the injunctive order. An outright killing, under such circumstances, is frequently held to be justifiable homicide, or perhaps more often, merely manslaughter. Surely, such evidence would have tended to excuse the violation of a routine order barring him from his home, or would have at least tended to mitigate the offense, if any. Of course, the offered evidence may be wholly fictitious, but it was material.

The judgment and sentence appealed from is reversed, and the cause remanded for such further proceedings as may be necessary and appropriate.

BEALS, C. J., MILLARD, and JEFFERS, JJ., concur.